# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**MIGUEL GONZALEZ-LOPEZ,**

**Plaintiff,**

**v.**

**CASE NO. 16-2710 (GAG)**

**STATE INDUSTRIAL PRODUCTS CORP.; STATE CHEMICAL SALES COMPANY INTERNATIONAL, INC.; JOHN DOE; JANE ROE; INSURANCE COMPANIES A, B, AND C,**

**Defendants.**

## <u>OPINION AND ORDER</u>

Plaintiff Miguel Gonzalez-Lopez ("Gonzalez-Lopez" or "Plaintiff") sued State Industrial Products Corp. and State Chemical Sales Company alleging unlawful discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 (Docket No. 1). Gonzalez-Lopez also invokes the Court's supplemental jurisdiction, for claims arising under Puerto Rico's Act No. 100 of June 30, 1959, P.R. LAWS ANN. Tit. 29, §146 *et seq.* ("Act 100"), Act No. 115 of December 20, 1991, P.R. LAWS ANN. Tit. 29, §194 *et seq.* ("Act 115"), Act No. 80 of May 30, 1976, P.R. LAWS ANN. Tit. 29, §185a *et seq.* ("Act 80"), and for alleged violations of Sections 1, 8 and 16 of the Bill of Rights of the Puerto Rico Constitution.[1] Pending before the Court are State Chemical and State Industrials motions for summary judgment. (Docket Nos. 171; 173). After

---

[1]    Plaintiff withdrew claims under Article 1802 and 1803 of the Puerto Rico Civil Code. (Docket No. 195 at 29).

**Civil No. 14-1217 (GAG)**

disposing of preliminary matters involving Local Rule 56, the Court **GRANTS** aforementioned motions for summary judgment.

### I.    Local Rule 56[2]

As a threshold issue the Court must determine whether Plaintiff Opposition to the Uncontested Material Facts (Docket No. 195) complies with Local Rule 56. Gonzalez-Lopez's opposition statement of uncontested material facts included additional facts in his denials and qualifications of the moving party's facts.

At the summary judgment stage, parties must follow Local Rule 56. Section (c) instructs that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, *short, and concise* statement of material facts." L. Cv. R. 56(c) (emphasis added). This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Each denial and qualification must be supported by a record citation. Id.

In addition to allowing an opposing party to admit, deny, or qualify the moving party's facts, Local Rule 56(c) allows an opposing party to submit additional facts "*in a separate section*." Id. (emphasis added). As the First Circuit has stated, "[t]he plain language of the rule specifically requires that additional facts be put forward in a 'separate section.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) (holding that district court acted within its discretion when it disregarded additional facts not contained in a separate section). A separate section serves two purposes: "to allow the moving party to reply to those additional facts and to allow the court to easily determine the disputed facts." Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R.

---

[2]    The Rule 56 standard is referenced from the Court's opinion in Natal Perez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 218 (D.P.R. 2018) and adapted to the present case.

Civil No. 14-1217 (GAG)

2013). For these reasons, "a party may not include numerous additional facts within its opposition to the moving party's statements of uncontested facts." Id.

If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted. The First Circuit has consistently held that litigants ignore Local Rule 56 at their peril. See Caban Hernandez v. Philip Morris USA, Inc., 486 F. 3d 1, 7 (1st Cir. 2007). Thus, due to the consequences of noncompliance with Rule 56, a better understanding is essential.

The line between a properly supported qualification, a denial, and additional facts may be blurry. Because Local Rule 56 requires each qualification or denial be supported by a record citation, a better understanding of what constitutes a proper qualification or denial is necessary to comply with the rule.

A qualification is "[a] modification or limitation of terms or language; esp., a restriction of terms that would otherwise be interpreted broadly." *Qualification*, Black's Law Dictionary 1436 (10th ed. 2014). Simply put, a qualification must clarify a statement of fact that, without clarification, could lead the Court to an incorrect inference. Thus, if a fact states that "Plaintiff works as an attorney all day," a proper qualification would be: "Plaintiff works as an attorney from 9-5" and a citation to the record supporting this fact. This would prevent the Court from inferring that Plaintiff works as an attorney from 7 a.m. to 9 p.m., which can be the standard in the legal world. Adding that Plaintiff works from 9-5 would not be considered an "additional fact" in the context of Local Rule 56. On the other hand, a denial, as common sense suggests, is "[a] statement that something is not true." *Denial*, id. at 527. So if a fact states that "Plaintiff is an attorney," a proper denial would be: "Denied. Plaintiff is a doctor" and a citation to the record supporting this fact.

**Civil No. 14-1217 (GAG)**

First Circuit case law sheds some light on when parties cross the line between a proper qualification or denial and additional facts. In <u>Acevedo-Padilla v. Novartis Ex Lax, Inc.</u>, the district court held that "a party's denial or qualification of a proposed fact *must be strictly limited to the issue therein raised.* Any additional information shall be included in a separate section in order to ease the Court's task." 740 F. Supp. 2d 293, 298 (D.P.R. 2010), <u>rev'd and remanded on other grounds</u>, 696 F.3d 128 (1st Cir. 2012) (emphasis added). The First Circuit affirmed this ruling, labeling it "an appropriate exercise of [the district court's] discretion." <u>Acevedo-Parrilla</u>, 696 F.3d at 137 ("[D]istrict court, in an appropriate exercise of its discretion, ruled that it would disregard any additional facts provided by [plaintiff] when denying or qualifying [defendant's] statement of uncontested facts"). So, returning to the previous example of the 9-5 attorney, it could be improper to qualify the fact that Plaintiff works "all day" by adding that one day at work, Plaintiff's boss made a discriminatory remark. This fact would not be "strictly limited to the issue therein raised." <u>Acevedo-Padilla</u>, 740 F. Supp. 2d at 298.

The Court notes that the "strictly limited to the issue therein raised" standard for denials and qualifications, as articulated by my esteemed colleague, the late Senior Judge Salvador E. Casellas, is demanding but necessary. <u>Id.</u> The Court wants to impart justice, and lawyers play an essential role in helping it achieve this goal. Honest argumentation and clear presentation of the issues and facts help the Court tremendously. The opposite burdens the Court just as much.

Gonzalez-Lopez's response to State Chemical's statement of uncontested facts has indeed burdened the Court beyond cavil. Many of Gonzalez-Lopez's denials and qualifications contained pages of additional facts. For example, Paragraph 11 of State Chemical's statement of uncontested facts states: "González hand-delivered his resignation on June 12, 2015, effective June 15, 2015".

**Civil No. 14-1217 (GAG)**

(Docket No. 171-1 ¶ 11). A proper denial should be limited to those facts. Instead, Gonzalez-Lopez goes on to argue the characterization of the word <u>resignation</u>:

> Admitted in part, denied in part. It is admitted that the Plaintiff hand delivered his employment resignation letter. However, Plaintiff denies the characterization of "resignation", since it is incorrect that it was a free and voluntary employment termination as it is incorrectly implied, since this is a contested fact as demonstrated by the evidence on record. On May 28, 2015, Plaintiff was wrongfully terminated and/or forced to resign from his job position because of the discriminatory treatment and retaliatory conduct against him became so intolerable and overwhelming that his health was being affected and continues to be affected.  After trying numerous times to seek a resolution with the Company and from his direct supervisors, Plaintiff did not obtain any remedy for the discriminatory treatment that he was subjected to. Therefore, with great sadness and after 26 years of outstanding service, Plaintiff was forced to resign from his employment. State Chemical's and State Industrial's conduct forced him to resign. Therefore, Plaintiff was wrongfully terminated from his employment as a result of the Company's illegal practices. Exhibit 5, Plaintiff's Answer to Defendants' Set of Interrogatories, Interrogatory No. 19, pages 32-40. 9 Thus, there are genuine issues for trial on the facts concerning whether or not Plaintiff freely and voluntarily resigned from his employment, or whether he was constructively discharged and forced to resign.

(Docket No. 195-1 ¶ 10)[3] (citations omitted).

Furthermore, Gonzalez-Lopez provided 271 additional facts that are mostly repetitive statements and legal arguments, at times contradicting his denials to State Chemical's statement of uncontested facts. (Docket No. 195-1). The Court could ignore them, as shown above, for not complying with Local Rule 56. But the Court firmly believes in access to justice, the lack of which is a serious problem in Puerto Rico, and feels uncomfortable completely disregarding these additional facts. <u>See</u>, <u>e.g.</u>, Luis F. Estrella Martínez, Acceso a la Justicia 5 (2017) ("Dworkin visualizes 'integrity' as an ideal that aspires that public powers are not exercised in a capricious or arbitrary way, but coherently.") (translation ours); Deborah L. Rhode & Pablo J. Hernández Rivera, *Access to Justice in Puerto Rico*, 86 Rev. Jur. UPR 818, 822 (2017) ("The challenges

---

[3]      Plaintiff incorrectly numbered the fact he was denying.

5

Civil No. 14-1217 (GAG)

facing Puerto Rico in ensuring access to justice remain substantial."); Federico Hernández Denton, *Acceso a la justicia y Estado de Derecho*, 81 Rev. Jur. UPR 1129 (2012) (focusing on two issues that "directly affect the manner in which one can measure our Rule of Law's success . . . access to justice and court efficiency") (translation ours); José Trías Monge, Sociedad, Derecho y Justicia 291 (1986) ("[L]awyer[s] must ensure the continued improvement in the progress of our courts.") (translation ours). Thus, the Court will consider Gonzalez-Lopez's answers to the statement of uncontested facts, nonetheless, disregarding any self-serving legal argument contained therein, and focusing solely on the facts correctly contested by Gonzalez-Lopez that could raise a genuine issue of material fact.

## II.    Relevant Factual Background

González was born on March 9, 1953. (Docket Nos. 171-1 ¶ 13; 195-1 ¶ 12). Gonzalez-Lopez began working with State Chemical in February 1989. (Docket Nos. 171-1 ¶ 2; 195-1 ¶ 2). Generally, González worked from 8:00 AM to 4:30 PM on Mondays through Thursdays, and would work half days on Fridays. (Docket Nos. 171-1 ¶ 3; 195-1 ¶ 3). Daniel Hurst worked for State Chemical on two separate occasions. First, from 1984 through 1997 and then again from 2008 until December 2011. During his second period of employment for State Chemical, Mr. Hurst was the Vice President of Sales of the Operations. (Docket Nos. 171-1 ¶ 14; 195-1 ¶ 13). In 2013 Hal Uhrman, who at the time was suffering from frontal lobe dementia, was asked to step down as CEO of State Industrial by its Board of Directors. (Docket Nos. 171-1 ¶ 17; 195-1 ¶ 17). Seth Uhrman was named acting CEO of State Industrial, and shortly thereafter, was appointed CEO by the Board. (Docket Nos. 171-1 ¶ 18; 195-1 ¶ 18).

Civil No. 14-1217 (GAG)

1      *1. Salary Arrangement and Vacation Pay*

2      Plaintiff was compensated on a straight commission basis, with a 4% in expense

3      reimbursement on the basis of the sales completed. (Docket Nos. 171-1 ¶ 4; 195-1 ¶ 4). The

4      Company had either a standard salary arrangement or a straight commission compensation.

5      (Docket Nos. 171-1 ¶ 5; 195-1 ¶ 5). At some point, Plaintiff requested to be paid on a salary basis.

6      (Docket Nos. 171-1 ¶ 6; 195-1 ¶ 6). Plaintiff, however, wanted an arrangement based on a prorated

7      version of the quantity of commissions he was making. (Docket Nos. 171-1 ¶ 7; 195-1 ¶ 7). No

8      such compensation arrangement existed in the company, and thus, Plaintiff's request was denied.

9      (Docket Nos. 171-1 ¶ 8; 195-1 ¶ 8).

10     In 2012, as a result of a misunderstanding created by the wording in the Sales Associate

11     Handbook, State Chemical made holiday payments to commissioned sales persons, including

12     Plaintiff. (Docket Nos. 171-1 ¶ 55; 195-1 ¶ 55).[4] On January 31, 2013, Plaintiff received a letter

13     from State Chemical regarding the holiday pay and informing that moving forward the company

14     was suspending the validity of the Employee Handbook provision as to holiday pay. (Docket Nos.

15     171-1 ¶ 56; 195-1 ¶ 56). Subsequently, the Sales Associate Handbook was changed in 2013.

16     (Docket Nos. 171-1 ¶ 56; 195-1 ¶ 56).[5]

17     *2. Assigned Sales Territory ("AST") Program*

18     In April 2013, State Chemical gave a presentation to its sales force - (including Plaintiff) -

19     entitled "the Future of State." State Chemical informed its sales organization team to focus on key

20     clients with accounts that purchase $2,500 or more a year, by establishing relationships with

21

22     [4]      Plaintiff denies said fact since he claims it was not a misunderstanding, but what the Handbook stated.
       (Docket No. 195-1 ¶ 55). Gonzalez-Lopez was awarded his vacation pay and the company then suspended that
23     portion of the handbook.
       [5]      Plaintiff denies said fact citing Edgardo Erazo's deposition testimony, but the pages cited are not
24     included in the Exhibit, thus, the fact is deemed unopposed.

7

Civil No. 14-1217 (GAG)

decision-making personnel and providing services that offer to protect prices. (Docket Nos. 171-1 ¶ 19, 20; 195-1 ¶ 19, 20).   Historically, State Chemical's point of sale was with the client representative who would use the product, such as someone from the maintenance or housekeeping departments, to whom the Account Manager would pitch, demo, and close with. (Docket Nos. 171-1 ¶ 21; 195-1 ¶ 21).

State Chemical reasons that it had to adapt its business model inasmuch as the industry had changed from an employee in the maintenance department making purchasing decisions, to a Purchasing Department now making said decisions. (Docket Nos. 171-1 ¶ 22; 195-1 ¶ 22).   In addition, State Chemical announced its plan to divide and assign sales by geographic territory, creating the Assigned Sales Territory Program ("AST"). (Docket Nos. 171-1 ¶ 24; 195-1 ¶ 24).

With the AST program, State Chemical now had two types of Account Managers, those who were assigned an AST and those who were not. (Docket Nos. 171-1 ¶ 31; 195-1 ¶ 31). The AST Program had already been implemented in the continental United States and Canada. (Docket Nos. 171-1 ¶ 30; 195-1 ¶ 30).

State Chemical implemented the AST Program during a sales force meeting held on April 1, 2014 in Puerto Rico, in which the names of the sales persons who had received a geographic territory were announced. (Docket Nos. 171-1 ¶ 33; 195-1 ¶ 33).   Plaintiff learned he was not assigned a territory. (Docket Nos. 171-1 ¶ 34; 195-1 ¶ 34).   As of April 1, 2014, there were twenty (20) Account Managers in State Chemical. (Docket Nos. 171-1 ¶ 35; 195-1 ¶ 35).[6]   Five (5) out of the ten (10) Account Managers who were assigned an AST were over forty (40) years old at the time of assignment on April 1, 2014: (1) Mariano Matos, (2) Jorge Martinez, (3) Sonia Fernandez,

---

[6]    Confusingly, Gonzalez-Lopez denies this statement citing the deposition transcript of Gerardo Maldonado that states "that there were between '19-21' sales representatives." (Docket No. 195-24 at 85-86).

Civil No. 14-1217 (GAG)

(4) Hermogenes de Jesus, and (5) Johanna Cartagena. (Docket Nos. 171-1 ¶ 35; 195-1 ¶ 35).[7] Nine (9) out of ten (10) individuals that were not assigned a territory were in the protected age category. (Docket Nos. 195-1 ¶ 89; 210-1 ¶ 89).[8]

On April 2, 2014, State Chemical adopted and notified to plaintiff the "Assigned Sales Territory & Operating Procedures Handbook" ("2014 AST Handbook"). (Docket Nos. 171-1 ¶ 40; 195-1 ¶ 40). The 2014 AST Handbook modified the Open Bucket Policy in the following manner; accounts in the open bucket would now be available [to]: (1) the account manager previously in charge of said account, provided that he/she had entered that account as a project into the funnel system within fifteen days from April 1, 2014; (2) the AST Account Manager in the sales territory where the account was located; and (3) the Telesales team. (Docket Nos. 171-1 ¶ 44; 195-1 ¶ 44).[9]

State Chemical justified that it was not economically efficient for account managers to tend to customers that bought less than $250 in a 6-month period. (Docket Nos. 171-1 ¶ 45; 195-1 ¶ 45). The cost to serve such accounts was not fiscally viable, so State Chemical decided these accounts could be served more efficiently through Telesales. Id.[10]

On April 4, 2014, Plaintiff requested to be assigned a sales territory. (Docket Nos. 171-1 ¶ 38; 195-1 ¶ 38). In response, he was offered a territory on 30-day trial basis. Id.[11] Plaintiff rejected this offer. (Docket Nos. 171-1 ¶ 39; 195-1 ¶ 39). Plaintiff's complaints about not receiving an AST

---

[7]     Gonzalez-Lopez correctly denied that Esteban Sanchez was not assigned a territory.
[8]     The statement read that the nine (9) individuals were the oldest sales representatives. (Docket No. 195-1 ¶ 89). This statement was correctly contested by State Chemical. (Docket No. 210-1 ¶ 89). It is not contested that these individuals were in the protected age category.
[9]     On April 3, 2014, Jeff Geffert ("Geffert") emailed sales representatives, including Plaintiff, to clarify aspects of the 2014 AST Handbook. (Docket Nos. 171-1 ¶ 47; 195-1 ¶ 47). Geffert's email made the rules regarding the open bucket clear to Plaintiff. (Docket Nos. 171-1 ¶ 48; 195-1 ¶ 48).
[10]    If an account was in jeopardy of being placed in the open bucket, the Account Manager could appeal to the District Sales Manager to not place the account in the open bucket based on business necessity. (Docket Nos. 171-1 ¶ 46; 195-1 ¶ 46).
[11]    Gonzalez-Lopez denies the statement. Nonetheless, in his denial, Plaintiff is qualifying that he was only offered "part of a territory".

Civil No. 14-1217 (GAG)

1    were dismissed by his supervisor, Tomás Vélez, who responded: "oh, you pester so much, you cry

2    so much." (Docket Nos. 195-1 ¶ 129; 210-1 ¶ 129).

3         *3.  2015 AST Handbook*

4         Approximately a year after the implementations of the AST program, new rules established

5    prohibiting sales representatives without assigned sales territory from selling inactive accounts,

6    and sales representatives without an assigned sales territory lost inactive accounts. (Docket Nos.

7    195-1 ¶ 171; 210-1 ¶ 171).[12] This new rule did not apply to sales representatives with an assigned

8    sales territory. In effect, if one of their accounts went inactive, they could still go ahead and try to

9    reactivate it. (Docket Nos. 195-1 ¶ 173; 210-1 ¶ 173).

10        Prior to March 31, 2015, a sales representative who was not assigned a sales territory, could

11    reactivate dormant accounts. (Docket Nos. 195-1 ¶ 174; 210-1 ¶ 174).[13] Then on, said option was

12    removed. Id. Thus, those who had assigned territories had disparate opportunities to open new

13    accounts as the rules varied for those who did not have AST. (Docket Nos. 195-1 ¶ 175; 210-1 ¶

14    175). The 2015 changes applied to all salespersons. (Docket Nos. 195-1 ¶ 188; 210-1 ¶188).

15         *4.  Failure to Promote and Unequal Treatment*

16        District Managers would accompany Accounts Managers to the field, in a practice known

17    as field visits. (Docket Nos. 171-1 ¶ 59; 195-1 ¶ 59). Field visits were more frequent with new

18    employees during their first year of employment than with experienced Account Managers, as the

19

20

21    [12]    State Chemical's qualified admission clarifies that: "On March 31, 2015, State Chemical adopted the 'General Operating Procedures Handbook' of February 2015 (hereinafter, '2015 AST Handbook'). (Docket No. 171-1, ¶54; and 195-1, ¶54). Pursuant to said 2015 AST Handbook, 'accounts in the open bucket are considered

22    off limits to account managers without an AST.' (Docket No. 171-19 at 5). However, if the account manager had included the account in the funnel report 'you could continue the follow up of that account that you had protected and they would reassign the account to you.'" (Docket Nos. 195-1 ¶ 171; 210-1 ¶ 171).

23    [13]    The date of the referenced policy was qualified by State Chemical. (Docket Nos. 195-1 ¶ 174; 210-1 ¶

24    174).

Civil No. 14-1217 (GAG)

1    training plan during the first year of employment for Account Managers is more aggressive. Id.[14]

2    In general terms, for example, an Account Manager's first month of employment, District

3    Managers conduct around 12-14 field visit; Thereafter, weekly field visits are conducted for the

4    remainder of the first year. (Docket Nos. 171-1 ¶ 60; 195-1 ¶ 60).

5            From 2008 and 2011, Daniel Hurst ("Hurst") was developing employees for career growth

6    in to managerial positions. (Docket Nos. 195-1 at 57 ¶ 32; 210-1 ¶ 32).  During this time Plaintiff

7    approached Hurst to express his interest in a managerial position. Id. However, Hurst was

8    instructed by Hal Uhrman not to promote Plaintiff to manager for he was too old. (Docket No.

9    195-1 at 57 ¶ 35; 210-1 ¶ 35). Plaintiff applied for a supervisory position in 2011. (Docket No.

10   171-1 ¶ 62; 195-1 ¶ 62).  Plaintiff afterwards applied for a District Sales Manager position, which

11   was ultimately granted to Gerardo Maldonado in early 2013. (Docket Nos. 171-1 ¶ 63-64; 195-1

12   ¶ 63-64).

13       *5.  Resignation[15]*

14           González was 62 years old at the time of his resignation. (Docket Nos. 171-1 ¶ 13; 195-1

15   ¶ 12). Prior to his resignation, Plaintiff commented that he was approaching his retirement age.

16   (Docket Nos. 171-1 ¶ 12; 195-1 ¶ 11).[16] González resigned on June 12, 2015, effective June 15,

17   2015. (Docket Nos. 171-1 ¶ 11; 195-1 ¶ 10).  On December 21, 2015, Plaintiff filed a charge of

18   discrimination before the EEOC. (Docket Nos. 171-1 ¶ 95; 195-1 ¶ 95).

19

20   _____

21   [14]    Gonzalez-Lopez denies said fact by simply arguing that "[t]he Company, however, did not assist older
     employees and did not go out to the field with them as often as with younger employees". (Docket No. 195-1 ¶
22   59).  Legal arguments do not controvert this fact.
     [15]    The paragraph numbers do not coincide since Gonzalez Lopez incorrectly numbered his answers to
23   these statements.
     [16]    Gonzalez-Lopez denies this fact, even though he cites as proof of his denial his deposition testimony in
24   which he states: "Oh, because I used to say I was reaching my retirement age." (Docket No. 195-9 at 258).

**Civil No. 14-1217 (GAG)**

### III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

Civil No. 14-1217 (GAG)

however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### IV. Discussion[17]

Defendant's arguments for summary judgment are that: (1) a substantial portion of Plaintiff's claims are time-barred, (2) Plaintiff failed to effectively plead or meet the requirements of a disparate impact claim, (3) Plaintiff failed to bring a pattern and practice claim, (4) Plaintiff failed to bring direct evidence of discrimination for his disparate impact claims, (5) Plaintiff failed to meet the McDonnell Douglas burden-shifting framework for his disparate impact claims, (6) Plaintiff' hostile work environment, constructive discharge, and retaliation claims fail as a matter of law, and (7) Plaintiff's state law claim fail for the same reasons as his ADEA claims.

### A) Statute of Limitations

Before delving into the merits of Plaintiff's age discrimination claim, the Court shall address the statute of limitations argument. State Chemical argues that Plaintiff's failure to promote allegations, the AST assignment decision, the implementation of certain policies related to the AST, and the Company's alleged policy of not paying holidays to older employees all time-barred. (Docket No. 172 at 9-14).

Under the ADEA, a plaintiff must file an employment discrimination complaint with the EEOC within 300 days of the alleged discrimination before bringing suit in federal court. Ramos

---

[17]    State Chemical in its Motion for Summary Judgment develops legal arguments against a pattern-or-practice claim. (Docket No. 171 at 5-6). Gonzalez-Lopez twice mentions in the complaint that there was a pattern of discrimination against him because of his age. (Docket No. 1 ¶ 20 and ¶ 44). This was the extent of Gonzalez Lopezs' legal argument regarding a pattern-or-practice claim. Gonzalez-Lopez never argued or developed a pattern-or-practice claim under Federal Rule of Civil Procedure 23. Thus, if Gonzalez-Lopez was truly putting forth a pattern-or-practice claim, which the Court seriously doubts, the same is deemed waived.

Civil No. 14-1217 (GAG)

v.Vizcarrondo, 120 F. Supp. 3d 93, 103 (D.P.R. 2015) (citing Rivera–Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 21 (1st Cir. 2001)) (*abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, (2002)). The EEOC complaint must contain a statement generally describing the actions or practices that form the basis of the complaint. Ramos, 120 F. Supp. 3d at 103. However, under the "continuing violation doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). It is well-settled, however, that the continuing violation doctrine does not apply to discrete acts of alleged discrimination. Ayala, 780 F.3d 52, 57 (1st Cir. 2015). "Instead, [the doctrine] applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims." Ayala, 780 F.3d at 57. Thus, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and time-barred acts are not actionable, "even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113.

Termination, failure to promote, refusal to hire, a change of supervisor, and the failure to assign work constitute "discrete acts," and each can "start a new clock" for filing an administrative complaint. Id. "In addition, [the United States Supreme Court has] held that the denial of a reasonable accommodation, the failure to renew a contract, a change of supervisor, a relocation to another floor, a transfer to another office, and the failure to assign work to an employee also constitute discrete acts." Ayala, 780 F.3d at 57. There is no doubt that the 300-day period to file a claim begins upon the initial occurrence of the discrete adverse employment action, even if "the effect of the employer's [actions] continues to be felt by the employee for as long as he remains employed." Id. at 58 (citations omitted).

Civil No. 14-1217 (GAG)

### 1) Failure to Promote

Plaintiff argues that he applied for a supervisory position twice and was denied the opportunity because of his age. The first supervisory position Plaintiff applied for was in 2011. (Docket No. 171-1 ¶ 62; 195-1 ¶ 62). Prior to 2014 plaintiff applied for a District Sales Manager position, which was ultimately granted to Gerardo Maldonado. (Docket No. 171-1 ¶ 63; 195-1 ¶ 63). Plaintiff filed a charge of discrimination before the EEOC on December 21, 2015. (Docket No. 171-1 ¶ 95; 195-1 ¶ 95). Under case law, failure to promote is a discrete act that starts a new clock to file an administrative complaint. Morgan, 536 U.S. at 113. Thus, Plaintiffs failure to promote claim is time-barred since it is an easily identifiable discrete act. The EEOC complaint was filed more than 300 days from the initial occurrence of both discrete acts (2011 and 2013).

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's disparate treatment claim regarding State Chemical's failure to promote Gonzalez-Lopez.

### 2) Implementation of the AST Program

Plaintiff's age discrimination claim is heavily founded on the implementation of the AST and the fact that he was not assigned a territory. During the sales force meeting held April 1, 2014, State Chemical implemented the AST Program and announced the names of sales personnel who received a geographic territory. (Docket Nos. 171-1 ¶ 33; 195-1 ¶ 33). Plaintiff learned at said meeting that he was not assigned a territory. (Docket Nos. 171-1 ¶ 34; 195-1 ¶ 34). On April 4, 2014, Plaintiff requested to be assigned a sales territory. In response, Plaintiff was offered a territory on a 30-day trial basis. (Docket Nos. 171-1 ¶ 38; 195-1 ¶ 38). Plaintiff rejected this offer. (Docket Nos. 171-1 ¶ 39; 195-1 ¶ 39).

15

**Civil No. 14-1217 (GAG)**

As discussed above, transfer or a failure to assign work constitutes a discrete act that starts a new clock to file an administrative complaint. <u>Morgan</u>, 536 U.S. at 113.  Thus, Plaintiff's claim that he was not awarded a territory due to his age is an easily identifiable discrete act, which is time-barred as it was filed more than 300 days from the event.

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's disparate treatment claim regarding the implementation of the AST.

*3)  2014 AST Handbook: Open Bucket Policy*

Plaintiff argues that the AST Handbook created the open bucket policy, which resulted in him loosing several accounts. On April 2, 2014, the Company adopted and notified Plaintiff of the 2014 AST Handbook. (Docket Nos. 171-1 ¶ 40; 195-1 ¶ 40).

Plaintiff's claim that AST Handbook created the open bucket policy which caused him to lose several accounts is an easily identifiable discrete act which is time-barred since it was filed more than 300 days from the occurrence of the act. (Docket Nos. 171-1 ¶ 40; 195-1 ¶ 40).  The policy was notified to Plaintiff on April 2, 2014, and further explained the next day by Geffert. Plaintiff thus knew exactly the consequences the policy had on his employment.

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's disparate treatment claim regarding the 2014 AST Handbook.

*4) Holiday Pay*

Gonzalez-Lopez claims he was discriminated because of his age since younger employees were payed holidays while he did not receive said pay. However, it was a misunderstanding created by the wording included in the Sales Associate Handbook that led State Chemical to make a holiday payment to its commissioned sales persons in 2012. (Docket Nos. 171-1 ¶ 55; 195-1 ¶ 55). On January 31, 2013, the Company sent plaintiff a letter addressing the issue of the holiday pay

Civil No. 14-1217 (GAG)

and informing him that moving forward the Company was suspending the validity of the Employee

Handbook provision regarding holiday pay. (Docket Nos. 171-1 ¶ 56; 195-1 ¶ 56). The Sales

Associate Handbook was changed in 2013. (Docket Nos. 171-1 ¶ 56; 195-1 ¶ 56).

As detailed above, Plaintiff was informed State Chemical would suspend the provision in

the Sales Associate Handbook regarding holiday pay on January 31, 2013. Thus, Plaintiff's claim

that younger employees received holiday pay is an easily identifiable discrete act which is time-

barred since it was filed more than 300 days from the occurrence of the act.[18]

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

Plaintiff's disparate treatment claim regarding holiday pay.

B) ADEA: Disparate Impact

The ADEA forbids an employer from discharging an employee because of her age. 29

U.S.C. § 623(a)(1); Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir. 2011).

An employee suing an employer for age discrimination must show either disparate treatment or a

discriminatory impact. To prove disparate treatment, a plaintiff must show purposeful or

intentional discrimination. Holt v. Gamewell Corp., 797 F.2d 36, 37 (1st Cir. 1986). To prove a

disparate impact, they must prove that a facially neutral practice has a significant discriminatory

impact on members of the protected class. Id. at 37 (citing Connecticut v. Teal, 457 U.S. 440, 446,

(1982)).

Defendants aver that Plaintiff did not properly plead a disparate impact claim and that their

legal analysis does not meet the burden to establish a discriminatory effect. (Docket No. 210 at 6).

"The bottom line is simply this: while courts should construe pleadings generously, paying more

---

[18]     Gonzalez-Lopez frames the claim as younger people when he really is referring to salaried AST holders
as compared to commission account managers without an AST. (Docket No. 195-9b at 336-337).

**Civil No. 14-1217 (GAG)**

attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir. 1995). Pleading under the Federal Rules of Civil Procedure requires that the opposing party be fairly notified of the claims asserted against them and the grounds on which those claims rest. See Torres Ramirez v. Bermudez Garcia, 898 F. 2d 224, 227 (1st Cir.1990). "Honoring this purpose ensures that cases will be decided on the merits after an adequate development of the facts." Rodriguez 57 F.3d at 1171 (citations omitted).

Here, Plaintiff does not expand much his disparate impact theory. (Docket No. 1).[19] Furthermore, Plaintiff fails to develop legal arguments regarding the disparate impact theory. "Plaintiff was further a victim of disparate impact when the Defendants enforced what seemed like facially neutral employment practices that merely distinguished between assigned sales territories holders and non-holders of an assigned sales territories. However, said employment practices affected more harshly the older employees." (Docket No. 195 at 13). Along with the description of the differences between AST holders and non-AST holders, this is the legal argument for disparate impact. As the Supreme Court has stated, "it is not enough to simply allege that there is a disparate impact on workers, *or point to a generalized policy that leads to such an impact*. Rather, the employee is responsible for isolating and identifying the specific employment practices that

---

[19] Gonzalez-Lopez mentions disparate impact three times in his complaint. (Docket No. 1 at ¶31, ¶56, and ¶62). "Therefore, there was a disparate treatment based on age and/or Defendants' policies had a disparate impact in its application against employees in the protected age. The Defendants did this, and other things mentioned herein below, with the specific purpose and intention of discriminating against the Plaintiff because of his age and to force him to resign. Id. at 31. From reading the complaint Gonzalez-Lopez's disparate impact claim is based on the imposition of the AST and its policies. However, he fails to identify which specific policy. Instead, he jumps to the effect the implementation of the AST had on him. (Docket No. 1).

Civil No. 14-1217 (GAG)

are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005) (internal citations omitted) (emphasis added). "The failure to identify the specific practice being challenged is the sort of omission that could result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances . . . Id. (citations omitted). In this case, Plaintiff fails to correctly identify the relevant practice.

Additionally, it is well settled that a "disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2523 (2015). Thus, courts must "examine with care whether a plaintiff has made out a prima facie case of disparate impact . . . A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Id. Plaintiff's discrimination argument relies heavily on the fact that younger workers were given AST, while workers over the age of 40 were not. In support, Plaintiff proffers the differences there were between AST holders and non-AST holders, and the fact that 9 out of the 10 workers who were not assigned an AST fell within in the protected age category. (Docket No. 1 at 7-8).[20] This is insufficient evidence of "statistical analysis," and does not put forth a disparate impact theory. The mere fact that more salespersons under 40 were made AST holders is not sufficient to prove discrimination. "Although the figures admitted by appellant undeniably demonstrate that more males than females held higher paying positions at Smithkline's facility, the numbers are not provided in a context which would lend them probative value in a

---

[20]     State Chemical in turn argued that Five (5) out of the ten (10) Account Managers who were assigned an AST were over forty (40) years old at the time of assignment on April 1, 2014, to wit: (1) Mariano Matos, (2) Jorge Martinez, (3) Sonia Fernandez, (4) Hermogenes de Jesus, and (5) Johanna Cartagena. (Docket No. 171-1 ¶ 35; 195-1 ¶ 35).

Civil No. 14-1217 (GAG)

statistical sense." Rodriguez v. Smithkline Beecham, 224 F.3d 1, 7 (1st Cir. 2000) (declined to extend on other grounds by Rodriguez v. United States, 852 F.3d 67 (1st Cir. 2017)) (see also Bolden v. Clinton, 847 F. Supp. 2d 28, 35 (D.D.C. 2012)) (stating that "[t]he plaintiff here has merely presented general facts that describe the composition of the State Department's workforce. The plaintiff has not paired these facts with relevant comparisons of the applicants' relative qualifications. It is well-settled that mere description of the composition of a workforce, without more, does not support an inference of discrimination.").

Plaintiff presented no facts at the pleading stage that referred to the disparate impact cause by the implementation of the AST, only recitals of the differences between AST and non-AST holders. More so, did Plaintiff did not provide any statistical evidence linking the AST policy and the discriminatory effect it had on workers in the protected age category. Thus, Plaintiff failed to adequately plead a disparate impact claim. Furthermore, for the sake of argument, even if the Court found he did, Plaintiff failed to provide sufficient evidence of a prima facie case of disparate impact theory. His statistical evidence was lacking, and he never identified the correlation between the same and a facially neutral policy. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Disparate Impact claim.

C) ADEA: Disparate Treatment

Plaintiff alleges two instances of age discrimination on behalf of State Chemical. These are not time barred: (i) the implementation of the 2015 AST Handbook and (ii) his 2015 resignation. Each event is analyzed in turn.

To prevail on an age discrimination claim under the ADEA, an employee must show that age was the *but-for* cause of their termination by a preponderance of the evidence. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 571

Civil No. 14-1217 (GAG)

(1st Cir. 2012). "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). "The term 'direct evidence' normally contemplates only those statements by a decisionmaker that directly reflect the alleged animus and *bear squarely on the contested employment decision.*" Vesprini v. Shaw Contract Flooring Services, Inc., 315 F.3d 37, 41 (1st Cir. 2002) (quotation marks omitted) (emphasis added). Frequently, there must be a temporal proximity between the statements and the subsequent decision making for the direct evidence to properly establish a casual nexus between the remarks and the adverse employment action. Mojica v. El Conquistador Resort & Golden Door Spa, 714 F. Supp. 2d 241, 255 (D.P.R. 2010) (citing Vesprini 315 F.3d at 42 n. 5). The comments must also unambiguously display age-based animus and cannot be susceptible to an entirely benign connotation. Id. "[I]nherently ambiguous assertions normally do not constitute 'direct evidence' of an age-based animus." Id. (referring Vesprini 315 F.3d at 42). Finally, "comments by non-decisionmakers ... normally are not 'direct evidence' of age-based animus." Id. (citing Melendez–Arroyo v. Cutler–Hammer de P.R. Co., 273 F.3d 30, 35 (1st Cir. 2001)); (see also Kirk v. Hitchcock Clinic, 261 F.3d 75, 79 (1st Cir. 2001)) (finding that "[e]vidence is considered to be direct if it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.") And, "stray workplace remarks . . . normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F. 3d 63, 69 (1st Cir. 2002); see also Ortiz–Rivera v. Astra Zeneca LP, 596 F. Supp. 2d 231, 246 (D.P.R. 2009).

Plaintiff provides direct evidence of discrimination by reciting - once again - that there was a "plan" to get rid of old employees. (Docket No. 195 at 7-11). The Court turns to the comments

Civil No. 14-1217 (GAG)

1    Plaintiff puts forward as direct evidence of discrimination. The first comment Plaintiff provided

2    in support of his claim is the statement in which Hal Uhrman[21] instructed Daniel Hurst[22] to not

3    hire individuals over the age of 40 without his approval. Id. at 9 ¶ 19. This comment relates to the

4    hiring process for when Daniel Hurst worked for Hal Uhrman between 2008-2011. (see Vesprini

5    v. Shaw Contract Flooring Servs., Inc., 315 F.3d 37, 41–42 (1st Cir. 2002) "[t]he lack of temporal

6    proximity between these remarks and the ensuing disciplinary action by Shaw severely undermines

7    the reasonableness of any inference that there existed a causal relationship between the remarks

8    and the subsequent decision making by Shaw.") Furthermore, the comment relates to the hiring

9    process of new workers in the company, while the present complaint is based on the age

10   discrimination claim filed by Plaintiff regarding the AST. Thus, as pertaining to the present

11   Complaint, said comment does not bear squarely on the contested employment decision, and it is

12   far removed from the contested decisions.[23]

13       The second comment refers to an alleged statement by Seth Uhrman to Daniel Hurst

14   sometime between 2008-2011. (Docket No. 195-14 at 66-67). The comment stated that State

15   Chemical was "always looking for younger sales representatives" and that he did not want "old

16   sales representatives," he wanted "younger guys that would work harder." Id.  The comment refers

17   to the implementation of the AST, which is time barred, and thus does not represent direct evidence

18   of discrimination. (See Kirk, 261 F.3d at 79) (stating that "[the] comment may be direct evidence

19   of Hitchcock's discriminatory refusal to send Kirk to APD, but that claim is now time-barred.")

20   Additionally, the comments were made sometime between 2008-2011, meaning that they were at

21

22   [21]    State Industrial CEO until 2013. (Docket No. 171-1 ¶ 17; 195-1 ¶ 17)

     [22]    Vice President of Sales for State Chemical from 1984-1997 and from 2008 to December 2011. (Docket
23   No. 171-1 ¶ 13; 195-1 ¶ 13)
     [23]    There was also a comment by Hal Uhrman not to promote Gonzalez-Lopez because he was too old.
24   (Docket No. 195-1 at 57 ¶ 35).

**Civil No. 14-1217 (GAG)**

least four years removed from the two claims Plaintiff puts forth that are not time-barred, and thus, severely undermines the reasonableness of any inference that there existed a causal relationship between the remarks and the subsequent decision making. Finally, the statement refers to State Chemical wanting to hire younger workers, and does not clearly show an age based discriminatory animus related to the present complaint.

The third comment refers to the so called "long established plan". Mr. Hurst claims he was told that State Chemical wanted to get "rid of old people and hire new people," that they wanted "young 'fogoso' salesmen," and thus they were planning to divide the island into territories. (Docket No. 195-14 ¶ 58-59). This is not a comment attributed to anyone, and it relates to the implementation of the AST claim, which is time-barred. Additionally, the "comments" were made sometime between 2008-2011, meaning that they were at least four years removed from the two claims Plaintiff puts forth that are not time-barred, and thus, severely undermines the reasonableness of any inference that there existed a causal relationship between the remarks and the subsequent decision making.

The final comment refers to Plaintiff's claim that the AST were reserved for younger employees. (Docket No. 195-1 ¶ 145-148). Plaintiff claims when the territories were assigned, it was stated that the territories were reserved for the technologically savvy and those who could place orders using the internet. Id. Additionally, Paul Chatterton stated that the company will bring "[new or younger] people, new blood, who are skilled in technology." Id.[24] These statements do not clearly state that there was an age-based animus in the company. Furthermore, these statements

---

[24]    Contested by State Chemical with Gonzalez-Lopez's own deposition testimony stating that he did not recall whether Paul Chatterton said younger or newer. (Docket No. 210-1 ¶ 97).

**Civil No. 14-1217 (GAG)**

refer to the April 2014 meeting regarding the implementation of the AST claim, which is time-barred.

    1)  <u>McDonnell Douglas</u>

In absence of direct evidence, a Plaintiff may prove age discrimination with circumstantial evidence through the McDonnell Douglas burden-shifting framework. <u>Bonefont-Igaravidez</u>, 659 F.3d at 123 (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973)). In the first stage, Plaintiff bears the burden of establishing all four elements of the *prima facie* case, namely: (1) he was at least forty years old at the time of the alleged adverse employment action; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the employer later filled the position or did not treat age neutrally in taking the adverse action. <u>Bonefont-Igaravidez</u>, 659 F.3d at 124 (citing <u>Velez v. Thermo King de P.R., Inc.</u>, 585 F.3d 441, 447 (1st Cir. 2009) (<u>see also</u> <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993)).

In the second stage, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory basis for the termination." <u>Cruz</u>, 699 F.3d at 571. Once defendant sets forth a non-discriminatory basis for the employment action, the inference raised by the *prima facie* case dissolves and the final burden transfer occurs. <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 823 (1st Cir. 1991) (citing <u>Freeman v. Package Mach. Co.</u>, 865 F.2d 1331, 1336 (1st Cir. 1988)).

In the final stage, Plaintiff must show the reason given for the discharge is "merely a pretext for impermissible age discrimination." <u>Cruz</u>, 699 F.3d at 571. To make a showing of pretext, plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." <u>Meléndez v. Autogermana</u>, Inc., 622 F.3d 46, 52 (1st Cir. 2010) (quoting <u>Mesnick</u>, 950 F.2d at 824). Plaintiff must do more than dispute the legitimacy of the employer's asserted justification;

Civil No. 14-1217 (GAG)

he must also offer evidence "of the employer's discriminatory animus." Vega v. Kodak Caribbean, 3 F.3d 476, 479 (1st Cir. 1993) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)) ("liability under the ADEA depends upon whether age 'actually motivated the employer's decision' and [the court] [hesitates] to infer age-based animus solely 'from the implausibility of the employer's explanation.'").

a) *2015 AST Handbook*

Plaintiff first alleges that State Chemical unlawfully discriminated against him in violation of the ADEA when they adopted the 2015 AST Handbook. (Docket No. 195 at 13). State Chemical concedes the first two prongs of the *prima facie* case: (1) Plaintiff is a member of the protected category, and (2) Plaintiff was qualified for the position he held. State Chemical contests the third and fourth prongs of McDonnell Douglas: that Plaintiff suffered an adverse employment action and that the employer did not treat age neutrally.

The third prong of the prima facie case requires that Gonzalez-Lopez show he suffered an adverse employment action. Cruz, 699 F.3d at 571. The type of adverse action encompassed by the ADEA includes failure or refusal to hire, discharge, or discrimination "with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). The First Circuit has explained that "[t]o determine if an employment action is in fact 'adverse,' we look for whether it has '*materially* change[d] the conditions of plaintiff's employ.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 25 (1st Cir. 2017) (quoting Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). The action must, "at a minimum, impair or potentially impair the plaintiff's employment in some cognizable manner." Acevedo Martinez v. Coatings Inc. and Co., 251 F. Supp. 2d 1058, 1068 (D.P.R. 2003) (noting that demotion, failure to promote, suspension, as well as denial of benefits may also constitute adverse employment actions); see also White v. New

Civil No. 14-1217 (GAG)

Hampshire Dept. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000). The Supreme Court has stated that generally "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Plaintiff argues that the implementation of the 2015 AST Handbook:

> . . . took away from the sales representatives without an assigned sales territory the right to reactivate inactive accounts to better support their territories and accounts that went inactive. For sales representatives with an assigned sales territory, that rule did not apply. If one of their accounts went inactive, they could still go ahead and try to reactivate it. Prior to May 2015, a sales representative who did not have an assigned sales territory, could reactivate dormant accounts. After May 2015, that option was taken away from salespersons who did not have an assigned sales territory. People who had assigned territories and people who did not have assigned territories, did not have the same opportunities to open new accounts because the rules were different. This policy obviously favored younger employees which were the ones that had an assigned sales territory and disfavored older employees how had their hands tied because they could not open new accounts and could not sell to accounts that went inactive.

(Docket No. 195 ¶ 27).

Approximately a year after the AST program was implemented, State Chemical implemented policy changes establishing that sales representatives without an assigned sales territory could not sell to inactive accounts. The sales representatives without an assigned sales territory lost those inactive accounts. (Docket No. 195-1 ¶ 171; 210-1 ¶ 171).[25] For sales representatives with an assigned sales territory, that rule did not apply. If one of their accounts went inactive, they could still go ahead and try to reactivate it. (Docket No. 195-1 ¶ 173; 210-1 ¶ 173). It is clear that the

---

[25]    Qualified Admission by State Chemical clarified that: On March 31, 2015, State Chemical adopted the "General Operating Procedures Handbook" of February 2015 (hereinafter, "2015 AST Handbook"). Pursuant to said 2015 AST Handbook, "accounts in the open bucket are considered off limits to account managers without an AST." However, if the account manager had included the account in the funnel report "you could continue the follow up of that account that you had protected and they would reassign the account to you."

**Civil No. 14-1217 (GAG)**

2015 AST Handbook could potentially impair Gonzalez-Lopez's employment in a cognizable manner. The inability to reopen the inactive accounts could seriously affect Gonzalez-Lopez's earnings, thus causing a significant change in his benefits. Nonetheless, Plaintiff fails to meet the fourth element of the *prima facie* age discrimination case. No evidence on the record suggests that State Chemical did not treat age neutrally when it adopted the 2015 AST Handbook. Plaintiff simply argues that workers with AST, as opposed to those without AST, had better opportunities to open accounts because the rules were different. (Docket No. 195-1 ¶ 175; 210-1 ¶ 175). The 2015 changes applied to everyone. (Docket No. 195-1 ¶ 188; 210-1 ¶188). "While the burden of establishing a prima facie case is 'not onerous,' the plaintiff is still required to prove the prima facie elements by a 'preponderance of the evidence.' " Del Valle–Santana v. Servicios Legales De P.R., Inc., 804 F.3d 127, 131 (1st Cir. 2015). (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Plaintiff never showed, with any type of concrete evidence, statistical or by the way of comments, that would lead to a *prima facie* showing that State Chemical did not treat age neutrally when it adopted the 2015 AST Handbook.

Stage two of the burden-shifting framework requires the employer "to articulate a legitimate, nondiscriminatory basis for the adverse employment action." Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir.1989). This burden is easily met by State Chemical. In April 2013, the Company made a presentation to its sales force that informed the State Chemical sales organization that it wanted to focus on key clients with accounts that buy more than $2,500 a year, establish a relationship with the decision-making person, and provide services offering the opportunity to sign an agreement to protect prices. (Docket No. 171-1 ¶ 20; 195-1 ¶ 20).

In the final stage of the burden-shifting framework, Plaintiff must put forth sufficient evidence for a reasonable fact-finder to conclude the employer's justification was mere pretext and

Civil No. 14-1217 (GAG)

the true motive was age discrimination. Meléndez, 622 F.3d at 52 (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)). There is nothing on the record referring to the 2015 AST Handbook specifically that would prove that its implementation was age based. Plaintiff framed his arguments all around a "long established plan" to divide Puerto Rico into territories by the implementation of the AST and policies to remove older employees. (Docket 195 ¶ 4). Plaintiff argues that:

> . . . younger employees were assigned sales territories; younger employees were allowed to open new accounts; younger employees were allowed to reactivate dormant accounts; the managers went out to the field more frequently with younger employees; younger employees received a salary while older employees worked strictly on commissions; younger employees could substantially lower the prices for Company's product without having their income adversely affected; younger employees received holiday pay; and younger employees received a list of potential clients that they could visit to make sales while older employees did not receive any help.

(Docket 195, ¶ 5). Plaintiff frames the differences between AST and non-AST employees as younger in terms of age, but provides no additional evidence to further his argument. Plaintiff also presents statistical evidence that AST were assigned on the basis of age due to the fact that nine (9) out of ten (10) individuals that were not assigned a territory were in the protected age category. (Docket No. 195-1 ¶ 89; 210-1 ¶ 89). [26] "Statistical evidence is permissible on the issue of pretext in a disparate treatment case since statistics as to ... employment policy and practice may be helpful to a determination of whether [the employer's conduct] conformed to a general pattern of discrimination." Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir.1988) (internal citations omitted). Plaintiff further claims that the implementation of the AST was planned for years as to Puerto Rico, as it was for the United States and Canada, thus, showing that the

---

[26]    The fatal flaw for Plaintiff is that said blank statement was the extent of the "statistical analysis" as to why the assignment of the AST were based on age discrimination. As stated above, Gonzalez-Lopez's "statistical" evidence did not meet the criteria required to be effectively be considered by the Court.

Civil No. 14-1217 (GAG)

implementation of the AST was a pretext to remove the old employees. (Docket No. 195 at 8). His argument rests solely on the deposition of Mr. Hurst stating that "they would take the young people, give them those territories, give them a salary, and then just clear out most of the older guys." (Docket 195-16 at 26). Since Mr. Hurst was employed until 2011, the statement would be far removed from the 2015 AST Handbook implementation and additionally insufficient to meet the burden required by Plaintiff in this part of the McDonnell burden-shifting framework, which is to defeat the legitimate business decision proffered by State Chemical.

A reasonable fact-finder could not conclude Gonzalez-Lopez established the *prima facie* case for age discrimination arising from the implementation of the 2015 AST Handbook. Even if Plaintiff had established the *prima facie* case, he did not present in the record sufficient evidence for a reasonable fact-finder to conclude that the justification for implementing the 2015 AST Handbook was a mere pretext for discrimination on the basis of age. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's disparate treatment claim regarding the 2015 AST Handbook.

    *b) Constructive Discharge*

Gonzalez-Lopez's claim that his 2015 resignation was actually a constructive discharge is based on the same arguments considered above: in short, the implementation of the AST program and its policies were actually based on age discrimination.

It is widely held that "[j]ust as the ADEA bars an employer from dismissing an employee because of his age, so too it bars an employer from engaging in a calculated, age-inspired effort to force an employee to quit." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004) (citation omitted). "To prove constructive discharge, a plaintiff must usually 'show that [his] working conditions were so difficult or unpleasant that a reasonable person in [his] shoes would

have felt compelled to resign.'" Id. (quoting Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003)); see also Velázquez-Fernández, 476 F.3d at 12. "It is not enough that the plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." De La Vega, 377 F.3d at 117 (citation omitted).

Plaintiff must prove that the conditions imposed by State Chemical were so unmanageable that the only reasonable decision was for him to resign. Thus, "[t]he question is not whether working conditions at the facility were difficult or unpleasant," but rather, an employee "must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50–51 (1st Cir. 2008) (citations omitted). The standard is in its core "an objective one: *it cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held.*" Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002) (citation omitted) (emphasis ours); (see also Calhoun, 798 F.2d at 561 stating that "the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."); Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000).

Plaintiff's claim that he was constructively discharged fails the same way his 2015 AST Handbook claim fails. The crux of his claim is the same as the latter, that the implemented AST policies discriminated against him because of his age and even though he complained, nothing changed. (Docket No. 1 at 11-12). The 2015 AST Handbook does not meet the McDonnell Douglas burden shifting framework. Plaintiff also claims that he complained that he did not receive an assigned sales territory, to his supervisor, Tomás Vélez, who said to him: "oh, you pester so much, you cry so much." (Docket No. 195-1 ¶ 129; 210-1 ¶ 129). "The case law is clear that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not amount to

Civil No. 14-1217 (GAG)

adverse employment action, not even to establish an objectively hostile or abusive work environment." Sepulveda-Vargas v. Caribbean Restaurants LLC, 888 F.3d 549, 556 (1st Cir. 2018) (citations omitted). Finally, he refers to a comment by Seth Uhrman that he was tired of complaints filed by Puerto Rican salespeople. (Docket No. 1 ¶ 46). The comment is not age related in any way.

In conclusion, Plaintiff's sincerely held belief that the implementation of the AST policies were based on age discrimination is not enough to satisfy his constructive discharge claim. Even though the 2015 AST Handbook led to Gonzalez-Lopez losing certain accounts, a reasonable person would not see resignation as the only logical alternative.[27] Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's constructive discharge claim.[28]

D) Retaliation

In order to establish an ADEA claim of retaliation, a Plaintiff may present direct or circumstantial evidence of an employer's retaliatory conduct. Absent direct evidence, courts employ the McDonnell Douglas burden-shifting framework to evaluate circumstantial evidence of retaliation. Collazo, 617 F.3d at 46 (citing McDonnell Douglas, 411 U.S. at 802-04). Plaintiff must set forth a *prima facie* case by showing: (i) he engaged in a protected activity; (ii) he suffered an adverse employment action; and (iii) the adverse employment action was causally connected to the protected activity. Collazo, 617 F.3d at 46. If Plaintiff satisfies the *prima facie* case, then the burden of production shifts to the defendant to show a "legitimate, non-retaliatory reason" for the

---

[27]    It is important to remember that plaintiff was offered a territory on 30-day trial basis which would lead to him having the benefits of the AST employees. (Docket No. 171-1 ¶ 38; 195-1 ¶ 38).

[28]    "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Hernandez–Torres v. Intercontinental Trading, 158 F.3d 43, 48 (1st Cir.1998) (quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir.1992)). As, will be shown below, Plaintiff's hostile work environment claim fails as well, further defeating his constructive discharge claim.

**Civil No. 14-1217 (GAG)**

adverse employment action. Id. Then, Plaintiff must show defendant's reason is mere pretext, and that the true cause of the adverse action was retaliatory animus. Id.

Plaintiff can neither establish the second nor third prong of the *prima facie* case for ADEA retaliation. Plaintiff alleges he engaged in protected conduct when he complained that he did not receive an assigned sales territory to his supervisor, Tomás Vélez." (Docket No. 195-1 ¶ 129; 210-1 ¶ 129). Plaintiff additionally claims he "complained mostly from April 2014 up to [his] employment termination" and that he "complained directly to Mario Carrero, Tomás Vélez, Seth Uhrman, and Jeff Geffert" but that "[t]o the best of [his] recollection, [he] always complained verbally." (Docket No. 171-28 ¶ 25 at p. 44-45). Plaintiff does not recall the exact date when he complained. (Docket No. 171-3 at 339). Gonzalez-Lopez claims that after he filed such discrimination charge, and opposed State Chemical's and State Industrial's alleged unlawful employment practices, State Chemical retaliated against him and further continued their pattern of discrimination, and thus, he was forced to resign. (Docket No. 195 at 19).

That is the extent of the retaliation claim Gonzalez-Lopez puts forth. Since the Court already determined that Plaintiff was not constructively discharged, he doesn't meet the second prong of his retaliation claim. Even assuming in arguendo that he did, he never specified the times when he complained, making it impossible to determine the causality between the protected conduct and the adverse employment action. Thus, Plaintiff does not meet the third prong. And even then, he never specifies how State Chemical retaliated against him, only claiming that the policies did not change after he complained. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim.

E) Hostile Work Environment

Civil No. 14-1217 (GAG)

1       The First Circuit has recognized hostile work environment claims as actionable under the
2  ADEA. Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008). To succeed in an ADEA hostile
3  work environment claim, a plaintiff must show: (1) he is a member of the class protected by the
4  ADEA; (2) he was subjected to unwelcome harassment; (3) the harassment was based on age; (4)
5  the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's
6  employment and create an abusive work environment; (5) the behavior was both subjectively and
7  objectively offensive, such that a reasonable person would find it hostile or abusive; (6) that the
8  plaintiff found it hostile or abusive; and (7) some basis for employer liability has been established.
9  See Gutierrez-Lines v. P.R. Elec. & Power Auth., 751 F. Supp. 2d 327, 341-42 (D.P.R. 2010)
10  (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

11       Again, Plaintiff proffers the same set of arguments in support of his hostile work
12  environment claim; State Chemical, in assigning the AST and its policies, discriminated against
13  Plaintiff because of his age. (Docket No. 195 at 20-22). The AST policies and the two comments
14  that Plaintiff puts forth were already analyzed by this Court, which determined that they did not
15  proved sufficient to establish that he was constructively discharged. [29]

16       Plaintiff fails to meet prongs two, three, four, and five. Plaintiff never showed he was
17  subjected to unwelcome harassment or that it was based on his age. Plaintiff also never showed
18  the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's
19  employment and create an abusive work environment. Furthermore, as shown in the analysis to
20  his constructive discharge claim, Plaintiff could not prove that a reasonable person would find it

21

22

23  [29]    The comment by Tomas Velez that he Gonzalez-Lopez "cried a lot" and the comment by Seth Uhrman
that he was tired of complaints by Puerto Rican salespeople. (Docket No. 195-1 ¶ 129; 210-1 ¶ 129); (Docket
24  No. 195-14 at 58-59 and 66-67).

Civil No. 14-1217 (GAG)

hostile or abusive. Thus, Plaintiff's hostile work environment claim fails the same way his constructive discharge claim failed.[30]

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

F) <u>Supplemental State Law Claims</u>

Plaintiff invokes this Court's supplemental jurisdiction and asserts Puerto Rico state law claims under Law 115, Law 100, Law 80, and Article II of the Puerto Rico Constitution. (Docket No. 1).

Generally, dismissal of a plaintiff's federal claims well before trial will trigger the dismissal without prejudice of any supplemental state law claims. <u>Rodriguez v. Doral Mortg. Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995). However, in certain situations, a federal court may retain jurisdiction over state law claims even after dismissal of all federal claims. <u>Id.</u> The exercise of supplemental jurisdiction is "wholly discretionary" and determined on a case-by-case basis, with due consideration to factors such as judicial economy, convenience, fairness, and comity. <u>Id.</u>

In this case, interests of judicial economy, convenience, and fairness pull the Court towards retaining jurisdiction. The factual record has been fully developed, the federal and state claims arise from the same common nucleus of operative fact, and Plaintiff has elected to litigate in the federal forum. See <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 257 (1st Cir. 1996) (affirming the district court's discretionary decision to retain jurisdiction over supplemental state law claims for similar reasons). For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment as all Puerto Rico state law claims.

---

[30] Plaintiff's hostile work environment claim is based on the same facts as his constructive discharge claim. Even though the burden for a hostile work environment claim is lower than for a constructive discharge claim, Plaintiff still fails to meet it.

Civil No. 14-1217 (GAG)

    *1) Law 100*

Law 100 is Puerto Rico's anti-discrimination statute. The statute imposes civil liability on an employer who discharges or discriminates against an employee on the basis of age, race, gender, and religion, among other things. P.R. LAWS ANN. TIT. 29, §§ 146-151 *et seq.* "[O]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007). "As applied to age discrimination, [Law 100] differs from the ADEA only with respect to how the burden-shifting framework operates." Id.

As discussed above, there is insufficient evidence for a reasonable fact-finder to uncover any genuine issue of material fact relating to Plaintiff's age discrimination claim. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 100 claim.

    *2) Law 80*

Law 80 requires employers to provide compensation for at-will employees who are discharged without good cause. P.R. LAWS ANN. tit. 29, § 185a; Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013). The employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. Hoyos v. Telecorp Commc'n, Inc., 405 F. Supp. 2d 199, 205-06 (D.P.R. 2005) (internal quotations omitted). After, the employer must show, by a preponderance of the evidence, the dismissal was made for good cause. Id. Under the statute good cause includes "[r]eductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge." § 185b(f).

It was already determined by this Court that Plaintiff was not constructively discharged. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Law 80 claim.

Civil No. 14-1217 (GAG)

### 3) Law 115

To succesfully allege retaliation under Law 115, plaintiff must have been retaliated against by her employer. P.R. LAWS ANN. tit. 29, § 194(a). The analytical principles for a Law 115 claim and an ADEA claim are substantially the same. <u>Bustillo-Formoso v. Million Air San Juan Corp.</u>, 261 F. Supp. 3d 201, 212 (D.P.R. 2016), <u>aff'd</u>, 691 F. App'x 1 (1st Cir. 2017). Plaintiff failed under his retaliation claim under the ADEA, therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim under Law 115.

### 4) Puerto Rico Constitution

In his Complaint, Gonzalez-Lopez makes reference to Article II, §§ 1, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico. (See Docket No. 1 at 21-22). Gonzalez Lopez argues that the same set of facts submitted for his ADEA claims prove that State Chemical violated his right to protection against abusive attacks to his honor, his reputation, his dignity and his personal integrity on his job. <u>Id.</u>  To prevail in a cause of action for a constitutional violation in this context, "the plaintiff must present evidence of the employer's concrete actions that impinge upon the plaintiff's private or family life." <u>Rivera Rosa v. Citibank, N.A.</u>, 567 F. Supp. 2d 289, 302 (D.P.R. 2008) (quoting <u>Segarra Hernandez v. Royal Bank de Puerto Rico</u>, 145 P.R. Dec. 178, 203 (1998)). Gonzalez-Lopez provided no such concrete action. Furthermore, this claim is based on the same set of facts that this Court has already deemed do not meet the standards of age discrimination. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims arising under Article II of the Constitution of the Commonwealth of Puerto Rico.

**Civil No. 14-1217 (GAG)**

### V.    Conclusion

For the reasons stated above, Defendants' Motions for Summary Judgment at Docket Nos. 171 and 173 are **GRANTED**.[31] Plaintiff's claims are hereby DISMISSED with prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico this 20th day of March, 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[31]    The Court did not enter into an analysis of whether State Industrial was a joint employer with State Chemical in the present case. Since the claims against both are identical, and the motion for summary judgment was granted in favor of State Chemical, claims against State Industrial will also be dismissed. Nonetheless, the Court clarifies that it makes no determination in this opinion and order regarding the joint employer theory of liability regarding Defendants.